## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| HEATHER MOORE,<br>    Plaintiff,<br><br>v.<br><br>FIXMYCAR INC. d/b/a GOODHOOD<br>and PRASHANT SALLA, Individually,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:26-cv-342 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Heather Moore ("Plaintiff") brings this unpaid overtime suit against Fixmycar Inc. d/b/a Goodhood ("Fixmycar") and Prashant Salla, Individually ("Salla") (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. for unpaid overtime, retaliation and breach of contract.  For cause of action, she respectfully shows as follows:

### I.

### NATURE OF SUIT

1. Plaintiff worked exclusively for Defendants for over three and one-half years.  Plaintiff regularly worked in excess of forty (40) hours per workweek but was only paid straight time for all hours worked.  Defendants improperly classified Plaintiff as an independent contractor to avoid their obligations to pay Plaintiff overtime compensation under the FLSA.[1]

---

[1]In January 2026, Defendants provided Plaintiff with a document titled "Offer of W-2 Employment and Release," which reflected that Plaintiff "has worked for Company on an independent contractor basis since October 18, 2022." This document offered to classify Plaintiff as a W2 employee in exchange for Plaintiff's waiver of her rights to unpaid overtime compensation. To sweeten the pot, Defendants offered Plaintiff monetary consideration of $1.00 (one dollar).

2. On or about April 22, 2026, within hours of being notified that Plaintiff had retained counsel to address Defendants' systemic violations of the FLSA, Defendants fired Plaintiff, without notice or explanation.  Defendants have also refused to pay Plaintiff promised bonuses, commissions and even Plaintiff's last paycheck.

## II.

## PARTIES

3. Plaintiff Heather Moore is an individual residing in this judicial district.

4. Defendant Fixmycar Inc. d/b/a Goodhood is a Delaware corporation registered as a foreign profit corporation in the State of Michigan (Michigan Entity ID: 802572280), doing business in the State of Texas. Fixmycar's principal place of business is 206 E. Huron Street, Ann Arbor, Michigan 48104, and it may be served through its registered agent, Registered Agents Inc.

5. At all times relevant to this claim, Fixmycar was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

6. Defendant Prashant Salla is the Chief Executive Officer and a Director of Fixmycar Inc. d/b/a Goodhood, and he may be served at Fixmycar's principal place of business, 206 E. Huron Street, Ann Arbor, Michigan 48104 or his residence at 1012 Pontiac Trail, Ann Arbor Michigan, 48105, or wherever else he may be found.

7. At all times relevant to this claim, Prashant Salla was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

8. Prashant Salla acted directly or indirectly in the interest of Fixmycar in relation to Plaintiff.

9. Prashant Salla exercised managerial responsibilities and substantial control over Fixmycar's employees, including Plaintiff.

2

10. Prashant Salla had and exercised his authority to hire, fire, and direct Fixmycar's employees, including Plaintiff.

11. Prashant Salla had and exercised his authority to supervise and control the employment relationships and work schedules of Fixmycar's employees, including Plaintiff.

12. Prashant Salla had and exercised his authority to set and determine the rate and method of pay of Fixmycar's employees, including Plaintiff.

13. Prashant Salla had and exercised his authority to decide whether Fixmycar's employees, including Plaintiff, would be classified as independent contractors or employees.

14. Prashant Salla also kept and maintained employment records for Fixmycar's employees, including Plaintiff, and had the authority to determine what records were maintained, created, or destroyed. In fact, Mr. Salla destroyed both Gusto payroll records and Slack company communications, something he was known for doing on a fairly recurring basis.

### III.

### JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under a federal statute, the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

16. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff resides in the Eastern District of Texas, and performed work for Defendants in the Eastern District of Texas.

17. This Court has personal jurisdiction over Defendants because Defendants transacted business within the State of Texas, maintained operations in Texas, employed workers in Texas, and committed acts giving rise to this action within the State of Texas.

**IV.**

**COVERAGE UNDER THE FLSA**

18. At all times relevant hereto, Defendants were an "employer" within the meaning of 29 U.S.C. § 203(d), in that Defendants acted directly or indirectly in the interest of an employer in relation to Plaintiff.

19. At all times relevant hereto, Defendants constituted an "enterprise" within the meaning of 29 U.S.C. § 203(r), in that Defendants had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce.

20. At all times relevant hereto, Defendants constituted an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1), in that Defendants had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, and had annual gross volume of sales made or business done of not less than $500,000.

21. At all times relevant hereto, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e)(1).

22. In the course of her employment, Plaintiff handled, sold, or otherwise worked on goods or materials that had been moved in or produced for commerce within the meaning of 29 U.S.C. § 203(b). Specifically, Plaintiff coordinated vendors across multiple states, managed fleet accounts involving interstate commerce, communicated with parties in Texas, Michigan, and other states, and used instrumentalities of interstate commerce including telephones, computers, and the internet in her daily work.

4

## V.

### FACTUAL ALLEGATIONS

23. Fixmycar is a mobile automotive repair company that provides on-site vehicle repair services at customer locations, including residential, commercial, dealership, and fleet clients. Fixmycar operates branch locations in Dallas, Houston and Michigan.

24. Plaintiff began working for Defendants in or about October 2022 as a service writer.  She was responsible for managing both the retail and fleet departments across all branch locations. Her duties included dispatching technicians, managing scheduling, handling all customer quotes and service requests, coordinating vendors, managing fleet accounts, developing the fleet/commercial service model.

25. Throughout her employment, Plaintiff was classified as a 1099 independent contractor. She was paid on an hourly basis, with her rate progressing from $13.00 per hour to $26.00 per hour over the course of her employment.

26. Throughout her employment, Plaintiff regularly worked in excess of forty (40) hours per workweek. Plaintiff typically worked between 55 and 70 hours per week, sometimes working until 1:00 AM and beyond.

27. Plaintiff was paid straight time for all hours worked over forty per workweek.

28. Defendants treated Plaintiff as an independent contractor even though Defendants controlled her work schedule, requiring her to work set hours and to be available during all business hours.

29. Defendants treated Plaintiff as an independent contractor even though Defendants controlled the manner and method of her work, directing her duties, the systems she used, and the procedures she followed.

30. Defendants treated Plaintiff as an independent contractor even though Plaintiff could not make independent business decisions and was required to follow Defendants' directives in all aspects of her work.

31. Defendants treated Plaintiff as an independent contractor even though Plaintiff had no opportunity for profit or loss independent of Defendants. Her compensation was entirely dependent on the hourly rate set by Defendants and hours worked for Defendants.

32. Defendants treated Plaintiff as an independent contractor even though Plaintiff worked exclusively for Defendants and had no opportunity to perform work for other companies or clients during her employment. Indeed, Defendants actively prohibited Plaintiff from obtaining outside employment.

33. Defendants treated Plaintiff as an independent contractor even though Plaintiff made no investment in her own business infrastructure, tools, or equipment. She used Defendants' systems, dispatch tools, and communication platforms to perform her work.

34. Defendants treated Plaintiff as an independent contractor even though Plaintiff's work was integral to Defendants' core business.

35. Defendants treated Plaintiff as an independent contractor even though Plaintiff's relationship with Defendants was continuous, permanent, and exclusive, spanning over three and one-half years from October 2022 through the present.

36. Defendants treated Plaintiff as an independent contractor even though Defendants themselves acknowledged the misclassification by presenting Plaintiff with an "Offer of W-2 Employment and Release of Claims Agreement" in January 2026, which stated the transition was intended to "better reflect the nature of the relationship."

37. Despite regularly working in excess of 40 hours per workweek, Defendants never paid Plaintiff overtime compensation at the rate of one and one-half times her regular rate of pay as required by

29 U.S.C. § 207. Instead, Defendants paid Plaintiff on a straight-time basis for all hours worked, including overtime hours.

38. Defendants' failure to pay overtime was willful. Defendants knew or showed reckless disregard for whether their conduct violated the FLSA.

39. Throughout Plaintiff's employment with Defendants, Defendants refused to pay Plaintiff earned bonuses, commissions, and even for her last week of pay.

40. On April 21, 2026, Plaintiff's counsel sent Mr. Salla via email a detailed settlement proposal and a copy of this unfiled Complaint, putting Defendants on notice of Plaintiff's FLSA claims.

41. That same day, Plaintiff's counsel sent Mr. Salla, via email, a formal evidence preservation letter, directing Defendants to preserve all documents and electronically stored information relevant to Plaintiff's claims, including payroll records, time records, Slack communications, email correspondence, and Gusto payroll system data.

42. Rather than engage in good-faith settlement discussions or address the documented wage violations, Defendant Salla's immediate response to learning of Plaintiff's FLSA claims was to terminate Plaintiff's employment.

43. The day after Defendants' receipt of the settlement proposal and draft Complaint, Defendants revoked Plaintiff's access to company systems, including Slack and the Goodhood browser portal, effectively locking Plaintiff out of the tools necessary to perform her job. There has been no communication with Plaintiff since then.

## VI.

## CAUSES OF ACTION

### COUNT I
### Unpaid Overtime in Violation of the Fair Labor Standards Act
### 29 U.S.C. §§ 207 and 215(a)(2)

44. Plaintiff incorporates all prior allegations as if fully set forth herein.

45. Defendants violated 29 U.S.C. §§ 207 and 215(a)(2) by failing to compensate Plaintiff at the rate of one and one-half times her regular rate of pay for hours worked in excess of forty (40) in a workweek.

46. Defendants failed to make, keep, and preserve records with respect to Plaintiff as required by 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2. Defendants deleted a significant amount of Plaintiff's original payroll records from the Gusto payroll system and periodically destroyed workplace communications.

47. Defendants did not act in good faith and did not have reasonable grounds for believing that their actions and omissions were in compliance with the FLSA. Defendants' violations were willful.

48. As a result of Defendants' violations, Plaintiff is entitled to recover unpaid overtime compensation, an equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), reasonable attorney's fees and costs, and pre-judgment and post-judgment interest.

49. Plaintiff seeks all relief available under 29 U.S.C. § 216(b).

### COUNT II
### Retaliation in Violation of the Fair Labor Standards Act
### 29 U.S.C. § 215(a)(3)

50. Plaintiff incorporates all prior allegations as if fully set forth herein.

51. Section 215(a)(3) of the FLSA makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA.

52. Plaintiff engaged in activity protected by 29 U.S.C. § 215(a)(3). Through her counsel, Plaintiff asserted her rights under the FLSA by sending Defendants a settlement demand and draft FLSA complaint on or about April 21, 2026.

53. Less than 24 hours later, Defendants discharged Plaintiff by revoking Plaintiff's access to Slack and Goodhood company systems necessary for her to perform her job duties, and cutting off all contact with Plaintiff.

54. A direct causal connection exists between Plaintiff's protected activity and Defendants' adverse employment actions. Defendants' retaliatory conduct began within hours after Defendants received Plaintiff's counsel's settlement proposal and draft FLSA complaint. The temporal proximity alone supports an inference of causation.

55. Defendants' retaliatory conduct was willful, taken in bad faith, and in conscious disregard of Plaintiff's rights under the FLSA.

56. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits.

57. Plaintiff seeks all relief available under 29 U.S.C. § 216(b), including but not limited to reinstatement or, in the alternative, front pay, back pay, liquidated damages, and reasonable attorney's fees and costs.

## COUNT III
## Breach of Contract

58. Plaintiff incorporates all prior allegations as if fully set forth herein.

59. Defendants entered into a contract with Plaintiff, whether express or implied, pursuant to which Defendants agreed to compensate Plaintiff for all hours worked, to pay commissions and bonuses earned by Plaintiff, and to timely pay all wages earned through the end of Plaintiff's employment.

60. Plaintiff fully performed her obligations under the contract.

61. Defendants breached the contract by failing to pay commissions earned by Plaintiff, failing to pay bonuses owed to Plaintiff, purposefully shorting Plaintiff's recorded hours to reduce the wages paid below the amounts actually earned, and failing to pay Plaintiff's wages for the final pay period of her employment.

62. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered actual damages in an amount to be proven at trial, and Plaintiff is entitled to recover such damages together with prejudgment interest at the statutory rate.

## VII.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, and award the following relief:

a. Back wages in the amount of overtime compensation owed to Plaintiff, plus an equal amount of liquidated damages, pursuant to 29 U.S.C. § 216(b);

b. Reasonable attorney's fees and costs of this action, pursuant to 29 U.S.C. § 216(b);

c. Reinstatement to her former position or, in the alternative, front pay in lieu of reinstatement;

d. All damages available for retaliation under 29 U.S.C. § 215(a)(3), including back pay, an equal amount of liquidated damages and punitive damages;

e. All damages as a result of Defendants' breach of contract;

f.      Pre-judgment and post-judgment interest as allowed by law;

g.      Such declaratory and/or injunctive relief as may be appropriate;

h.      Such other and further relief as this Court may deem just and proper.


                        Respectfully Submitted,



                        **WELMAKER LAW, PLLC**
                        505 E. Magrill
                        Longview, Texas 75601
                        Tel: (512) 799-2048

                        By: */s/ Douglas B. Welmaker*
                        Douglas B. Welmaker
                        Texas State Bar No. 00788641
                        doug@welmakerlaw.com

                        **ATTORNEY FOR PLAINTIFF**

11